<u>CLOSED</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUPER 8 MOTELS, INC., a South Dakota Corporation, | : |
| Plaintiff, | : |
| v. | : |
| AMBA LLC, a South Carolina Company, LALBHAI N. PATEL, an individual; PRAFUL B. VEER, an individual; and JIGAR B. PATEL, an individual, | : |
| Defendants. | : |

CIVIL ACTION NO. 05-2767 (JCL)

**OPINION**

### **LIFLAND, District Judge**

Plaintiff Super 8 Motels, Inc. ("SMI" or "Plaintiff") moves for final judgment by default, pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2), against Amba LLC ("Amba"), Lalbhai N. Patel ("L. Patel"), Praful B. Veer ("Veer"), and Jigar B. Patel ("J. Patel") (collectively, "Defendants") for breach of a franchise licensing agreement ("Franchise Agreement") and for violations of the Lanham Act. For the reasons stated herein, SMI's motion will be granted in whole as to liability, and in part as to damages.

I.   **Background**

_____SMI, a South Dakota corporation with its principal place of business in Parsippany, New Jersey, is a franchisor of guest lodging facilities.  (Compl. ¶¶ 1, 11.)  Amba is a limited liability company existing under the laws of South Carolina.  (Id. ¶ 2.)   L. Patel is a citizen of North Carolina; Veer is a citizen of South Carolina;  J. Patel is a citizen of Georgia.  (Id. ¶¶ 3-5.)  Subject matter jurisdiction over this action is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  The Court has personal jurisdiction over all Defendants pursuant to the Franchise Agreement, wherein they consented to the "non-exclusive personal jurisdiction of and venue in . . . the United States District Court for the District of New Jersey."  (Id. ¶¶ 8-9, Ex. A, § 17.4, Ex. B.)

On May 21, 1998, SMI entered into the Franchise Agreement with Amba for the operation of a 74-room guest lodging facility located at 27 S. Pleasantburg Dr., Greenville, South Carolina, site no. 11328 (the "Facility").  (Id. ¶ 20.)  Amba was obligated to operate the Facility as a Super 8 guest lodging facility for twenty years, during which time Amba was permitted to use the Super 8 marks[1] in

---

[1] The SMI guest lodging facility franchise system is comprised of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos and derivations thereof (the "Super 8

association with its operation of the Facility as part of SMI's franchise system.

(Id. ¶ 21.)  According to the Franchise Agreement, Amba agreed that the Facility would comply with SMI's "System Standards," and would achieve and maintain certain scores on periodic quality assurance inspections conducted by SMI.  (Id. ¶¶ 22-24, Ex. A. § 3.)  Furthermore, Amba agreed to make certain periodic payments to SMI for royalties, taxes, interest, reservation system user fees, and other fees (collectively, "recurring fees"), and to accurately report to SMI its monthly gross revenue for the purpose of determining the amount of recurring fees due to SMI.

(Id. ¶¶ 25-27, Ex. A §§ 7 and 3.9.)  Failure to "pay [SMI] when a payment is due, [or failure to] perform any . . . other obligations when [the Franchise] Agreement and the System Standards Manual require" constitutes a "default" under the Franchise Agreement.  (Id., Ex. A. § 11.1.)

Under section 11.2 of the Franchise Agreement, SMI had the right to terminate the license if, inter alia, Amba (a) failed to pay any amount due to SMI under the Franchise Agreement, (b) failed to remedy any other defaults of its obligations under the Franchise Agreement within 30 days of receiving written notice from SMI of such defaults, or (c) received two or more notices of default in a one-year period, regardless of whether Amba cured such defaults.  (Id. ¶ 28, Ex.

marks").  (Aff. of Kathy Cox in Supp. of Motion for Summ. J. ("Cox Aff.") ¶ 3.)

A.)  Termination of the Franchise Agreement under section 11.2 obligated Amba to pay liquidated damages to SMI.  (Id. ¶ 29, Ex. A §§ 12.1 and 18.3.)   The individually named Defendants provided SMI with a Guaranty of Amba's obligations under the Franchise Agreement, whereby they agreed to "immediately make each payment and perform or cause Franchisee to perform, each unpaid or underperformed obligation of Franchisee under the [Franchise] Agreement" upon a default by Amba.  (Id. ¶¶ 33-34., Ex. B.)

In a letter dated April 2, 2001, SMI notified Amba that it was in default under the Franchise Agreement for failing to pay SMI $20,365.43 in recurring fees, and that it had 10 days to cure this default.  (Id. ¶ 36, Ex. C.)  Amba failed to respond or cure the alleged default.

In a letter dated December 17, 2001, SMI notified Amba that it now owed $20,474.65 in past-due recurring fees, that it failed to submit monthly revenue reporting forms for July 2001 through November 2001, and that it had 10 days to cure these defaults.  (Id. ¶ 37, Ex. D.)  Again, Amba failed to respond or cure.

In a letter dated March 12, 2002, SMI notified Amba that it was in continuing default for past-due recurring fees, now totaling $23,356.70, that it failed to file monthly franchise reports for December 2001 through February 2002, and that it had 10 days to cure these defaults.  (Id. ¶ 37, Ex. E.)  Amba again failed

to respond or cure.

On November 22, 2002, SMI performed a quality assurance inspection of the Facility.  (Id. ¶ 40.)  In a letter dated December 11, 2002, SMI informed Amba that the Facility failed the inspection, and that it would face default if it did not pass its next inspection.  (Id. ¶ 40, Ex. G.)

In a letter dated January 17, 2003, SMI notified Amba that it was still in continuing default under the Franchise Agreement for both its failure to pay SMI past-due recurring fees now totaling $27,781.70, and for failing to pass the November 22, 2002 inspection.  The letter further informed Amba that the Franchise Agreement would be terminated on April 1, 2003 unless it cured both defaults by that date.   (Id. ¶ 41, Ex. H.)

On March 21, 2003, SMI conducted another quality insurance inspection of the Facility, and determined that it was, again, not in compliance with SMI's quality standards.  (Id. ¶ 42.)  In a letter dated April 2, 2003, SMI notified Amba that SMI terminated the Franchise Agreement, effective April 1, 2003, due to Amba's failure to meet its financial obligations and for Amba's failure to meet SMI's required quality standards.  (Id. ¶ 43, Ex. I.)  The letter further informed Amba that all items at the Facility displaying the Super 8 marks must be removed within 14 days.  (Id.)  The letter also demanded immediate payment of past-due

5

recurring fees, now totaling $32,517.06, and liquidated damages of $74,000.00. (Id.)

Defendants continued to use the Super 8 marks to rent rooms to the public through at least early 2004.  (Id. ¶¶ 46-48.)  During a May 4, 2004 inspection, SMI discovered that the Facility removed Super 8 marks from its exterior signage, but continued to use Super 8 marks on "secondary items," such as ice buckets and bars of soap.  (Cox Aff. ¶ 33, Ex. A.)

Plaintiff filed this action on May 31, 2005.  In count one, SMI alleges that Defendants violated sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a)[2] and 1125(a),[3] and requests compensatory damages, treble damages,

---

[2] Section 1114(1)(a) provides in pertinent part:
Any person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . .

[3] Section 1125(a) provides in pertinent part:
Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . .

attorneys' fees, prejudgment interest, and costs.  Count two requests disgorgement of profits and restitution.  Count three claims Defendants owe SMI $74,000.00 in liquidated damages under the Franchise Agreement.  In the alternative, SMI seeks actual damages resulting from the termination of the Franchise Agreement in count four.  Count five seeks $33,124.21 Plaintiffs claim Defendants owe in past-due recurring fees.  In count six, Plaintiff seeks an unspecified amount of recurring fees "that should be paid to compensate SMI for the period during which Amba misused the Super 8 Marks and was thereby unjustly enriched."  (Compl. ¶ 78.) Finally, count seven seeks to recoup all of the above monies from the individual Defendants as Amba's Guarantors under the Franchise Agreement.

The record indicates that Amba and Veer were properly served with process on July 24, 2005; L. Patel was served on July 13, 2005, and J. Patel was served on July 17, 2005.  Defendants failed to answer or otherwise plead with respect to the Complaint as required by Rule 12(a).  On August 29, 2005, SMI petitioned the Clerk of the Court for an entry of default against Defendants pursuant to Rule 55(a).  On August 30, 2005, the Clerk of the Court entered Default against Defendants for failure to appear.  On October 21, 2005, Plaintiff submitted the instant motion, seeking default judgment against Defendants.  The record indicates that SMI served Defendants with notice of its motion.

## II.   <u>Discussion</u>

### A.   <u>Default Judgment</u>

#### i.   <u>Standard of Review</u>

Federal Rule of Civil Procedure 55(b)(2) governs the Court's entry of default judgment.  The party against whom default judgment is requested must have been properly served with process.  Fed. R. Civ. P. 55(b)(2); <u>Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc.</u>, No. 99-755, 1999 WL 269903, at *1 (E.D. Pa. Apr. 28, 1999).  Before a default judgment may be entered by the court, the moving party must have obtained an entry of default pursuant to Rule 55(a); <u>see</u> <u>Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.</u>, 4 F.3d 1209, 1226 (3d Cir. 1993); 10A Wright, Miller, & Kane, <u>Federal Practice and Procedure</u>, § 2682, at 13 (3d ed. 1998).

A party seeking default judgment is not entitled to such relief as a matter of right, however, even where the defendant was served with process, and where the default has been noted pursuant to Rule 55(a).  <u>See, e.g.</u>, <u>Local Union No. 98, IBEW v. Cableco, Inc.</u>, No. 99-0755, 1999 U.S. Dist. LEXIS 7024, at *3 (E.D. Pa. Apr. 28, 1999) (citing <u>Petrucelli v. Bohringer & Ratzinger</u>, 46 F.3d 1298, 1303 (3d Cir. 1995)).  Rather, a court is "required to exercise sound judicial discretion

in deciding whether to . . . enter default judgment." Id.  Default judgment is generally disfavored because it prevents resolution of a plaintiff's claims on the merits.  Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).  Thus, when considering a motion for default judgment, a court may consider the following factors: the potential amount of damages; whether issues of material fact or substantial public concern are implicated; whether the default is primarily technical; whether the moving party has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or in doubt; whether the default was attributable to good faith, mistake, or excusable neglect; and whether the court may later be obliged to set aside the default.  Franklin v. Nat'l Maritime Union of Am., No. 91-0480, 1991 U.S. Dist. LEXIS 9819, at *1 (D.N.J. July 16, 1991) (citing 10 Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992).

 "A default judgment entered by the court binds the party facing the default as having admitted all of the well pleaded allegations in the plaintiff's complaint." Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc., 370 F.3d 715, 722 (8th Cir. 2004) (citing Fed. R. Civ. P. 55(b)(2)).

### ii.   SMI is Entitled to Default Judgment on Defendants' Liability

Here, the record indicates that Plaintiff effectuated service of process on Defendants.  Default was entered by the Clerk.  Furthermore, although notice of the instant motion is not required in order to enter a default judgment under Rule 55(b)(2), the record indicates that Defendants were served with notice of the instant motion for default judgment and with supporting documents on or about October 21, 2005, via certified mail.  Thus, the Court is satisfied that Defendants had ample notice of the Complaint and of the instant motion for default judgment and chose not to respond.

Accordingly, the Court will treat the allegations as to liability in the complaint as true and admitted by Defendants.  Under section 11.2 of the Franchise Agreement, SMI could terminate the agreement, with notice to Defendants, for, inter alia, Defendants' failure to pay any amount past-due under the Franchise Agreement, and for failure to pass SMI's quality assurance inspections.  Because Defendants failed to make required payments, and failed to ensure that the Facility passed SMI's inspections, SMI, with notice to Defendants, rightfully terminated the Franchise Agreement.  Plaintiff has established grounds for Defendants' liability for breach of the Franchise Agreement.

SMI has also established violations of sections 32 and 43(a) of the Lanham Act.  A violation of section 43(a) of the Lanham Act is established if Defendants'

10

use of the Super 8 marks is "likely to create confusion concerning the origin of the goods or services." S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 375 (3d Cir. 1992) (citing Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 192 (3d Cir. 1990)).  To prevail on an infringement claim under section 32 of the Act, SMI must demonstrate as well that Defendants' use of the marks was unauthorized.  Id. (citing United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 137 (3d Cir. 1981)).

The Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff.  Opticians, 920 F.2d at 195 (citing Jaycees, 639 F.2d at 142).  SMI and Defendants are using the same legally protectable trademark, owned by SMI.  There is, therefore, no question that their concurrent use is highly likely to cause consumer confusion about Defendants' affiliation with SMI.  SMI has thus shown a violation of section 43(a).

It is also apparent that Defendants' continued use of the trademark was unauthorized, in violation of section 32.  See 15 U.S.C. § 1114(1)(a) (holding liable "[a]ny person who shall, without the consent of the registrant--(a) use in commerce any reproduction . . . of a registered mark . . . in connection with which such use is likely to cause confusion."); ITT Industries, Inc. v. Wastecorp, Inc., 87

F. App'x. 287, 293 (3d Cir. Feb. 6, 2004) ("The unauthorized use of a mark by a former licensee presents a particular danger of confusion to the public.  It has been described as a fraud on the public, since they are led to think that the ex-licensee is still connected with the licensor.").  SMI formally terminated the License Agreement on April 1, 2003, rendering any subsequent use of the Super 8 marks by Defendants violative of section 32.  Defendants continued to use those marks until at least May 4, 2004.  Thus, SMI has shown a violation of section 32.

The public concern for enforcing the Lanham Act and contracts, such this one, weighs in favor of entering default judgment in this matter.  The failure to enter a default judgment would prejudice SMI in its ability to enforce its rights under the Lanham Act and the Franchise Agreement.  There is no evidence that Defendants' failure to answer the summons and Complaint in this matter or to respond to the motion for default judgment may be attributed to a good-faith explanation, mistake, or excusable neglect.  After reviewing Plaintiff's Complaint and the affidavits of Karen L. Alfieri and Kathy Cox in support of the motion for default judgment, the Court is satisfied that Plaintiff has sufficiently established the factors necessary to warrant entry of a default judgment for breach of the Franchise Agreement and for violation of sections 32 and 43(a) of the Lanham Act.

**B.**    **Damages**

    **i.**    **Standard of Review**

The only allegations in a plaintiff's complaint that are not treated as true upon the entry of a default judgment are those pertaining to the amount of damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).  Under Rule 55(b)(2) a district court "may conduct such hearings or order such references as it deems necessary and proper" in order "to determine the amount of damages." There are certain limited situations, however, where a district court can enter a final judgment without requiring further evidence of damages.  KPS Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003).

First, if the damages are for a "sum certain or for a sum which can by computation be made certain," a further evidentiary inquiry is not necessary.  Fed. R. Civ. P. 55(b)(1); KPS Assocs., 318 F.3d at 19; Comdyne I, 908 F.2d at 1149.  A claim for damages is not a "sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default."  KPS Assocs., 318 F.3d at 19.  "Such situations include actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof."  Id. at 19-20 (internal quotations omitted).

Second, claims for liquidated damages also do not require further

13

evidentiary inquiry.  Id. at 20 (citing 46 Am. Jur. 2d Judgments § 313).  Typically, liquidated damages are those either agreed upon by the parties in a contract, or fixed by operation of law.  Id.

Even when faced with claims for either uncertain or unliquidated damages, a district court may still, using its discretion, decline to hold a Rule 55(b)(2) hearing, particularly where the "'amount claimed [is] capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'"  Id. at 21 (quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)).

### ii.   SMI's Entitlement to Damages

Here, SMI seeks a combination of liquidated and unliquidated (and uncertain) damages from Defendants.  (Cox Aff. ¶¶ 34-38.)  Specifically, it seeks liquidated damages, unpaid recurring fees, pre-judgment interest on both the recurring fees and liquidated damages, infringement damages under the Lanham Act, and attorneys' fees and costs.[4]  The Court will address each in turn.

### a.   Liquidated Damages

---

[4] SMI sought a broader range of relief in the counts of its Complaint than it requested in its motion for default judgment and accompanying affidavits.  The Court will rely on Plaintiff's renewed requests for relief in its default judgment motion.

In the event of a termination of the Franchise Agreement under section 11.2,

sections 12.1 and 18.3 obligate Defendants to pay $74,000.00 in liquidated

damages to SMI.[5] (Cox. Aff. ¶ 14; Compl. ¶ 64, Ex. A.) No further evidence is

required to substantiate this amount. See KPS Assocs., 318 F.3d at 20. Thus, the

Court will grant SMI default judgment in the amount of $74,000.00 in liquidated

damages.

> b.   Pre-judgment Interest on Liquidated Damages

SMI asserts that it is entitled to $33,862.72 in pre-judgment interest on the

liquidated damages amount, calculated at a rate of 1.5 percent per month starting

May 1, 2003 and continuing until the November 14, 2005 return date. (Cox. Aff. ¶

35.) In addition, SMI seeks pre-judgment interest on the liquidated damages, at

the same rate, from the return date until the date of judgment. (Id. ¶ 36.) The

Franchise Agreement does not contain a provision requiring Defendants to pay

interest on liquidated damages. Under New Jersey law[6] however, "the award of

---

[5] As provided in section 18.3 of the Franchise Agreement, this figure is the
product of $1,000.00 multiplied by 74–the number of rooms Defendants were
authorized to operate in the Facility at the time of termination. (Compl., Ex. A.)

[6] Section 17.5 of the Franchise Agreement states that "[t]his Agreement will
be governed by and construed under the laws of the State of New Jersey."
(Compl., Ex. A.) "A contractual choice of law provision applies, with certain
limitations, to issues that the parties 'could have resolved by an explicit provision'
of the contract." Berg Chilling Sys. v. Hull Corp., 435 F.3d 455, 465 (3d Cir.

prejudgment interest for claims arising in contract is subject to the discretion of

the trial court."  Cooper Distrib. Co. v. Amana Refrigeration, 62 F.3d 262, 284 (3d

Cir. 1995) (citing Meshinsky v. Nichols Yacht Sales, Inc., 541 A.2d 1063, 1070

(N.J. 1988)).  Pre-judgment interest can be awarded on either liquidated or

unliquidated damages, Geroge H. Swatek, Inc. v. North Star Graphics, Inc., 587

A.2d 629, 632 (N.J. Super. Ct. App. Div. 1991), in order "to indemnify the

claimant for the loss of what the moneys due him would presumably have earned

if the payment had not been delayed."  Id. (quoting Ellmex Constr. Co. Inc. v.

Republic Ins. Co. of Am., 323 A.2d 495, 512 (N.J. 1974)).  The "basic

consideration" in awarding pre-judgment interest

> is that the defendant has had the use, and the plaintiff has not, of the
> amount in question; and the interest factor simply covers the value of
> the sum awarded for the prejudgment period during which the
> defendant had the benefit of monies to which the plaintiff is found to
> have been earlier entitled.

County of Essex v. First Union Nat'l Bank, 891 A.2d 600, 608 (2006) (internal

quotations omitted).

Here, because SMI has been denied use of the $74,000.00 liquidated

---

2006) (citing Restatement (Second) of Conflicts of Law § 187(1)).  Because the
application of pre-judgment interest to liquidated damages is an issue the parties
could have resolved by provision in the Franchise Agreement, the Court will give
effect to the choice-of-law provision, and apply New Jersey law.

damages amount since it became due, the Court is satisfied that awarding SMI pre-judgment interest is appropriate.  Thus, SMI is entitled to $33,862.72 in pre-judgment interest for the period from May 1, 2003 to the day before the November 14, 2005 return date,[7] and $12,552.56 for the period from November 14, 2005 to October 23, 2006, the date of judgment in this case.[8]  (Compl. Ex. A, § 12.1.) Accordingly, default judgment for pre-judgment interest on liquidated damages will be entered in the total amount of $46,415.28.

### c.   Recurring Fees

Under the umbrella of "recurring fees," section 7 of the Franchise Agreement requires Defendants to pay royalties, system assessment fees, taxes, and interest "on any past due amount . . . at a rate of 1.5 percent per month."

---

[7] The interest rate of 1.5 percent per month is equivalent to a rate of 18 percent per year.  Eighteen percent of the $74,000.00 liquidated damages amount is $13,320.00.  That amount divided by 365 days in a year, equals the amount of interest due per diem: approximately $36.49.  From May 1, 2003 (the first day liquidated damages were due under section 12.1 of the Franchise Agreement, i.e., 30 days after the April 1, 2003 termination date), to the day before the November 14, 2005 return date, 928 days elapsed.  Thus, the product of $36.49 multiplied by 928 days equals the pre-judgment interest due for the period prior to the return date: $33,862.72.

[8] From November 14, 2005 to, and including, October 23, 2006, 344 days elapsed.  This number multiplied by the interest due per diem, $36.49, results in $12,552.56.

17

(Compl. Ex. A.)  SMI seeks $29,410.38[9] in recurring fees, and has attached an itemized statement of those fees to the Cox Affidavit.  (Cox. Aff. ¶ 34, Ex. B.)  Thus, the Court is satisfied that SMI has demonstrated the amount of recurring fees owed by Defendants, and will grant SMI default judgment in the amount of $29,410.38.

> d.    Pre-judgment Interest on Recurring Fees

Section 7.3 of the Franchise Agreement applies interest on past-due recurring fees at a rate of 1.5 percent per month "accruing from the due date until the amount is paid."  (Compl., Ex. A.)  From the date of termination, April 1, 2003, until the day prior to the return date, November 14, 2005, 958 days elapsed, and interest accrued at $14.50 per day,[10] totaling $13,891.00.  (Cox Aff. ¶ 34.)  Additionally, SMI seeks interest on the past-due recurring fees at the same rate from the return date up until, and including, the date of judgment, October 23,

---

[9] SMI originally sought $33,124.21 in past-due recurring fees in count five of its Complaint. (Compl. ¶ 72.)  SMI does not explain why this figure has changed in the Cox Affidavit, submitted with its motion for default judgment; however, because this figure is lower than the recurring fees sought in the Complaint, and because SMI provided documentation substantiating the $29,410.38 figure (see Cox. Aff., Ex. B.), the Court will rely on this lesser figure.

[10] Again, the interest rate of 1.5 percent per month is equal to a rate of 18 percent per year.  Eighteen percent of the past-due recurring fee amount, $29,410.38, is approximately $5,293.87.  This amount divided by 365 days in a year, equals approximately $14.50 per day.

2006.  (Cox Aff. ¶ 36.)  By the Court's calculations, 344 days elapsed during this period, and at $14.50 per day, the additional interest amounts to $4,988.00.  The Franchise Agreement provides for the interest SMI requests, and thus, the Court is satisfied that SMI is entitled to default judgment for pre-judgment interest on the past-due recurring fees in the total amount of $18,879.00.

   e. <u>Infringement Damages</u>

  Section 35 of the Lanham Act allows a victorious Plaintiff to recover, <u>inter alia</u>, "any damages sustained by the plaintiff."  15 U.S.C. § 1117(a).  Additionally, a district court may, depending on the circumstances of the case, use its discretion to treble the actual damage award.  <u>Id.</u>  To determine the amount of damages sustained, some courts have used the amount of royalties the defendant would have paid during the infringement period under the now-terminated licensing agreement.  <u>See</u> <u>A&H Sportswear Co. v. Victoria's Secret Stores, Inc.</u>, 166 F.3d 197, 208-08 (3d Cir. 1999) (en banc) (citing, among others, <u>Howard Johnson Co. v. Khimani</u>, 892 F.2d 1512, 1519-20 (11th Cir. 1990), and <u>Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg. Inc.</u>, 597 F.2d 71, 75-76 (5th Cir. 1979)); <u>see also</u> <u>Ramada Inns, Inc. v. Gadsden Motel Co.</u>, 804 F.2d 1562, 1565 (11th Cir. 1986) ("Royalties normally received for the use of a mark are the proper measure of damages for misuse of those marks." (internal quotations omitted)).

19

SMI seeks $26,757.36 in damages for SMI's infringement from April 15, 2003 to May 5, 2004.  (Cox Aff. ¶¶ 37-38.)  SMI arrived at its damages figure by dividing what it claims was the Facility's reported total room revenue from April 2001 through March 2003, $668,934.00, by 24 months to produce an average monthly gross room revenue of $27,872.25.  SMI then multiplied this number by 12 months, the period of infringement, to produce an estimated amount of gross room revenue for the infringement period of $334,467.00.  It then multiplied this number by 8 percent, which SMI claims "was the [royalty] rate Amba had been required to pay pursuant to the Franchise Agreement."  (Cox Aff. ¶ 38.)  The result is its $26,757.36 figure.

There are two problems with SMI's computation.  First, section 7.1.1 of the Franchise Agreement states that Defendants were only obligated to pay a royalty "equal to five percent (5%) of Gross Room Sales of the Facility accruing during the calendar month," (Compl., Ex. A.), not 8 percent.  Second, SMI offers no evidence to corroborate its allegation that the Facility's reported room revenue from April 2001 through March 2003 was $668,934.00.  Insofar as its damages estimate relies on this figure, the Court cannot be assured of its accuracy.  To help ascertain an appropriate amount of damages under the Lanham Act, the Court will order Plaintiff to explain its use of 8 percent for royalty fees instead of 5 percent as

provided by the Franchise Agreement, and to provide documentation supporting its alleged reported room revenue figure of $668,934.00.  Otherwise, the Court will schedule a Rule 55(b)(2) damages hearing on the issue.

f.    <u>Attorneys' Fees & Costs</u>

Although section 35 of the Lanham Act permits a plaintiff to recover costs, 15 U.S.C. § 1117(a), and section 17.4 of the Franchise Agreement requires the "non-prevailing party [to] pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement," (Compl., Ex. A.), SMI has failed to support its claim for attorneys' fees and costs.  The conclusory allegations in the Alfieri Affidavit will not suffice.  (<u>See</u> Aff. of Karen L. Alfieri in Supp. of Motion for Def. J. ¶¶ 7-9.)  The Court will require descriptive time entries from counsel's billing records.[11]  Otherwise, the Court will schedule a Rule 55(b)(2) damages hearing on the issue.

**III.   <u>Conclusion</u>**

In sum, the Court finds Defendants liable for breach of the Franchise Agreement and for violations of the Lanham Act, and will enter default judgment

---

[11] As requested by SMI, these documents will be subject to an <u>in camera</u> review to accommodate counsel's attorney-client privilege concerns.

for Plaintiff in the amount of $168,704.66.[12]  As for SMI's request for Lanham Act damages, attorneys' fees, and costs, a damages hearing is appropriate under the circumstances, unless within 30 days SMI provides the necessary supplemental information referred to above.


_____  **/s/ John C. Lifland, U.S.D.J.**

**Date: October 23, 2006**

---

[12] This figure reflects the sum of $74,000.00 in liquidated damages, $46,415.28 in pre-judgment interest on the liquidated damages, $29,410.38 in recurring fees, and $18,879.00 in pre-judgment interest on the recurring fees.

22